# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| State Farm Fire and Casualty Company, | Case No. _____ |
| Plaintiff, | **DEMAND FOR JURY TRIAL** |
| vs. | **COMPLAINT IN DECLARATORY JUDGMENT** |
| Debra Geister; Andy Smit; Navigator Consulting Group, LLC; and Exzac, Inc. d/b/a Matrix-IFS, | |
| Defendants. | |

Plaintiff State Farm Fire and Casualty Company ("State Farm"), by and through its undersigned attorneys, for its Complaint in Declaratory Judgment against the above-named Defendants, states and alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. This action is brought pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 *et seq.*

2. State Farm is an insurance company that is incorporated and maintains its principal place of business in the state of Illinois. At all times material, State Farm was licensed to transact business and issue insurance in the states of Minnesota and South Dakota.

3. At all times material, Defendant Debra Geister ("Ms. Geister") is and was a citizen of the State of Minnesota. Ms. Geister is an interested party, to the

extent that she may attempt to assert rights under the insurance policies at issue in this action.

4. At all times material, Defendant Andy Smit ("Mr. Smit") is and was a citizen of the State of South Dakota. Mr. Smit is an interested party because he is a Plaintiff in the underlying lawsuit.

5. Defendant Navigator Consulting Group, LLC ("Navigator") was and is a limited liability company that was incorporated and has its principal place of business in the state of South Dakota. The members of Navigator are Ms. Geister and Mr. Smit, who are citizens of Minnesota and South Dakota, respectively. Navigator is an interested party to this action because it is the named insured under two of the insurance policies at issue and may attempt to assert rights under the insurance policies at issue in this action.

6. At all times material, Defendant Exzac, Inc. ("Matrix") was and is an Israel corporation doing business in the United States as Matrix-IFS with its principal place of business in the State of New Jersey. Matrix is an interested party to the extent that it may attempt to assert rights under the insurance policies at issue in this action.

7. Jurisdiction in this Court is properly conferred with respect to the allegations set forth herein under 28 U.S.C. § 2201 and § 1332 *et seq.* This matter involves citizens and entities of different states and an amount in controversy in excess of $75,000, exclusive of interest and costs.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the Personal Liability Umbrella Policy and Minnesota Businessowners Policy were written and issued in Minnesota; Ms. Geister is a citizen of Minnesota; Navigator is registered to do business in Minnesota; and a substantial part of the claim arose in Minnesota.

**FACTUAL BACKGROUND**

9. In or about May 2017, Mr. Smit commenced suit against Ms. Geister and Matrix in Civil Circuit Court in the Second Judicial Circuit of South Dakota, Lincoln County. A copy of the Amended Verified Complaint ("Underlying Complaint"), which was filed with the South Dakota Circuit Court on September 15, 2017, is attached hereto as **Exhibit A**.

10. The Underlying Complaint asserts that Mr. Smit and Ms. Geister are the majority owners of Navigator. (Ex. A, ¶ 7.)

11. According to the Underlying Complaint, Navigator's principal place of business is in Tea, South Dakota. (*Id.*)

12. According to the Underlying Complaint, Ms. Geister and Mr. Smit were managers of Navigator. (*Id.* at ¶ 9.) Navigator apparently provided consulting services in the financial services industry specializing in fraud and fraud prevention. (*Id.* at ¶ 10.)

13. In the Underlying Complaint, Mr. Smit brings nine counts against Ms. Geister. (Ex. A)

14.     Count I alleges fraudulent misrepresentation and deceit. Specifically, Count I alleges that Ms. Geister led Mr. Smit to believe that Matrix was interested in merging with Navigator, but rather than merging the two companies, Ms. Geister entered into an agreement with Matrix to transfer Navigator's clients to Matrix and bring Navigator's employees to Matrix. (*Id.* at ¶¶ 36 – 37.)  Mr. Smit further alleges that Ms. Geister used Navigator funds to purchase the Navigator office building, without his permission.  (*Id.* at ¶ 38.) Mr. Smit contends that he suffered pecuniary damages and emotional distress and that Ms. Geister's misrepresentations and deceit were willful, wanton, malicious, reckless, and oppressive.  (*Id.* at ¶ 40 – 41.)

15.     Count II alleges a breach of fiduciary duty.  Specifically, Mr. Smit alleges that as a manager of Navigator, Ms. Geister owed fiduciary duties of care, loyalty and good faith to Navigator and its shareholders, which included Mr. Smit.  (*Id.* at ¶ 43.)  Mr. Smit claims that Ms. Geister breached her fiduciary duty of care by using corporate assets for personal gain, forging Mr. Smit's signature on documents of legal significance and by taking clients from Navigator. (*Id.* at 44.)  He further alleges that Ms. Geister breached her duties of loyalty and good faith by seeking to disenfranchise Mr. Smit, locking him out of Navigator's systems and enriching herself at the expense of Mr. Smit.  (*Id.* at ¶ 45.)  Mr. Smit also alleges that Ms. Geister owed a duty to maintain proper insurance for Navigator's employees, which included Mr. Smit, and that she failed

to maintain Mr. Smit's insurance after she locked him out of Navigator.  (*Id.* at ¶¶ 46 – 47.)

16. Count III alleges usurpation of business opportunity.  Specifically, Mr. Smit alleges that Ms. Geister willfully and intentionally misappropriated business opportunities that belonged to Navigator and that both Mr. Smit and Navigator suffered damages as a result.  (*Id.* at ¶¶ 51 – 52.)   Mr. Smit asserts that Ms. Geister's usurpation of business opportunity was willful, wanton, malicious, reckless, and oppressive.  (*Id.* at ¶ 53.)

17. Count IV alleges conversion.  Specifically, Mr. Smit alleges that Ms. Geister and Matrix misappropriated Navigator's business assets, including its software, client lists, client information and other physical possessions for their individual use.  (*Id.* at ¶¶ 55 – 56.)   Mr. Smit asserts that Ms. Geister's and Matrix's conversion of Navigator's business assets was willful, wanton, malicious, reckless, and oppressive.  (*Id.* at ¶ 58.)

18. Count V alleges embezzlement.  Specifically, Mr. Smit claims Ms. Geister used Navigator funds for her personal enrichment and that as a co-owner and employee of Navigator, Ms. Geister owed Navigator the duty not to do so.  (*Id.* at ¶¶ 60 – 61.)  Mr. Smit asserts that Ms. Geister's embezzlement was willful, wanton, malicious, reckless, and oppressive.  (*Id.* at ¶ 62.)

19. Count VI alleges breach of contract.  Specifically, Mr. Smit alleges that Ms. Geister breached her contractual duty of exclusivity with Navigator when she entered into an employment agreement with Matrix.  (*Id.* at ¶ 65.)   He further

alleges that Ms. Geister disclosed trade secret materials including client lists, client accounts, and Navigator intellectual property, and that Navigator's operating agreement did not authorize her to disclose trade secret materials to a third-party.  (*Id.* at ¶¶ 68 – 69.)   Mr. Smit also contends that Ms. Geister breached the operating agreement by restricting access to Navigator's records and information.  (*Id.* at ¶ 72.)  Mr. Smit claims that Ms. Geister's actions were criminal in nature.  (*Id.* at ¶ 74.)

20. Count VII alleges misappropriation of trade secrets.  Specifically, Mr. Smit alleges that Ms. Geister misappropriated and shared Navigator trade secret information without Navigator's consent or without sufficient safeguards to prevent Matrix from misappropriating Navigator's trade secrets.  (*Id.* at ¶ 80.)  He asserts that Ms. Geister and Matrix continue to use Navigator's trade secrets to divert business from Navigator to Matrix.  (*Id.* at ¶ 81.)  Mr. Smit further alleges that Ms. Geister and Matrix are using Navigator's needs assessment proprietary tool to service business for Matrix's customers; that they have misappropriated Navigator's OFAC, CIP and DMS products system; as well as misappropriated Navigator's system and rules training programs, money laundering training programs, human trafficking training programs and typology development systems.  (*Id.* at ¶¶ 84 – 86.)  Mr. Smit contends that Ms. Geister and Matrix's misappropriation of Navigator's trade secrets was willful, wanton, malicious, reckless, and oppressive.  (*Id.* at ¶ 88.)

21. Count VIII alleges conspiracy. Specifically, Mr. Smit alleges that Ms. Geister and Matrix entered into an agreement to commit and facilitate wrongful conduct. (*Id.* at ¶ 90.) Mr. Smit claims that the conspiracy manifested itself in several respects, including, misappropriation and mismanagement of assets and revenue of Navigator and fraudulent and deceitful acts against Mr. Smit. (*Id.* at ¶ 91.) He further alleges that Ms. Geister and Matrix committed these acts with the knowledge or intent to injure Mr. Smit or Navigator or with reckless or negligent disregard for Mr. Smit or Navigator's rights and well-being. (*Id.* at ¶ 92.)

22. Count IX requests injunctive relief.

23. None of the claims asserted by Mr. Smith arise out of a covered loss resulting in property damage, bodily injury, personal injury, or advertising injury.

24. Each of the claims asserted by Mr. Smit are related to intentional conduct by Ms. Geister.

25. After being served with the Underlying Complaint, Ms. Geister tendered the claim to State Farm on September 19, 2017 under the Minnesota Personal Liability Umbrella Policy, of which she was a named insured.

26. At the time of the alleged conduct, Ms. Geister was a named insured under a Minnesota Personal Liability Umbrella Policy issued to her by State Farm. A true and correct certified copy of the applicable Personal Liability Umbrella Policy is attached hereto as **Exhibit B**. Upon information and belief, the policy was issued and delivered to Ms. Geister in Minnesota.

27. The Personal Liability Umbrella Policy states, in relevant part, as follows:

**Coverage L - Personal Liability**

If a claim is made or suit is brought against an **insured** for damages because of a **loss** for which the **insured** is legally liable and to which this policy applies, **we** will pay on behalf of the **insured**, the damages that exceed the **retained limit**. The most **we** will pay for such **loss** is the Coverage L Limit of Liability, as shown on the declarations page, regardless of the number of **insureds** who may be liable, claims made, or persons injured.

*** 

**DEFINITIONS**

"**loss**" means:

   a. an accident, including accidental exposure to conditions, which first results in **bodily injury** or **property damage** during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **loss**; or

   b. the commission of an offense which first results in **personal injury** during the policy period. A series of similar or related offenses is considered to be one **loss**.

"**bodily injury**" means physical injury, sickness or disease to a person, including death resulting therefrom.

"**personal injury**" means injury other than **bodily injury** arising out of one or more of the following offenses:

   a. false arrest, false imprisonment, wrongful eviction, wrongful detention of a person;

   b. abuse of process, malicious prosecution;

   c. libel, slander, defamation of character; or

8

    d. invasion of a person's right of private occupancy by physically entering into that person's personal residence.

"**property damage**" means physical damage to or destruction of tangible property, including the loss of use of such property. Tangible property does not include computer programs or data or the reconstruction of computer programs or data. Theft or conversion of property by an **insured** is not **property damage**.

\* \* \*

**Exclusions**

There is no coverage under this policy for any:

    **Loss** arising out of any **insured's business property** or **business** pursuits of any **insured**, unless:

        (1) the **loss** does not involve any land motor vehicle or watercraft; and

        (2) **required underlying insurance** applies to the **loss** and provides coverage that pays for the **loss** in the amount shown as the Minimum Underlying Limits on the declarations page;

    **Bodily injury** or **property damage** which is:

        a. either expected or intended by the **insured**; or

        b. the result of any willful and malicious act of the **insured**

    **Personal injury** when the **insured** acts with specific intent to cause any harm;

28.    On September 29, 2017, Ms. Geister informed State Farm that she also wanted claims filed under Navigator's Minnesota Business Policy and Navigator's South Dakota Business Policy.

9

29. At the time of the alleged conduct, Ms. Geister also qualified as an insured by definition under a Minnesota Businessowners Policy and a South Dakota Businessowners Policy. Both policies were issued to Navigator by State Farm. As a member/manager of Navigator, Ms. Geister qualified as an insured under both policies. A true and correct certified copy of the applicable Minnesota Businessowners Policy, with endorsements, is attached hereto as **Exhibit C**. A true and correct copy of the applicable South Dakota Businessowners Policy, with endorsements, is attached hereto as **Exhibit D**. Upon information and belief, the Minnesota Businessowners Policy was issued and delivered to Navigator Consulting Group, LLC in Minnesota and the South Dakota Businessowners Policy was issued and delivered to Navigator Consulting Group, LLC in South Dakota.

30. The Businessowners Policies state, in relevant part, as follows:[1]

This insurance applies:

> b. To **"personal and advertising injury"** caused by an offense arising out of your business, but only if the offense was committed in the **"coverage territory"** during the policy period.

***

**SECTION II**

**DEFINITIONS**

1. **"Advertisement"** means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of

---

[1] The Minnesota and South Dakota Businessowners Policies consist of the same coverage grant. However, each policy has its own state-specific endorsements.

attracting customers or supporters. For the purposes of this definition:

    a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**18**. **"Personal and advertising injury"** means injury, including consequential 'bodily injury,' arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of privacy, of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f. The use of another's advertising idea in your 'advertisement'; or

    g. Infringing upon another's copyright, trade dress or slogan in your 'advertisement.'

**Section II - Exclusions**

Applicable to **Coverage L - Business Liability**, this insurance does not apply to:

1. **Expected or Intended Injury**

    a. "Bodily injury" or "property damage" expected or intended to cause harm as would be expected by a reasonable person; or

    b. "Bodily injury" or "property damage" which is the result of willful and malicious, or criminal acts of the insured.

   This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

2. **Contractual Liability**

   "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

    a. That the insured would have in the absence of the contract or agreement; or

    b. Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

        (1) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

        (2) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**17.   Personal And Advertising Injury**

   a.   Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal or advertising injury";

\*\*

   e.   Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

\*\*

   l.   Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement";

   However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan;

\*\*

   n.   Arising out of a criminal act committed by or at the direction of the insured.

**SECTION I AND SECTION II – COMMON POLICY CONDITIONS**

**7.   Other Insurance**

**Section II – LIABILITY**

If other valid and collectible insurance is available to the insured for a loss we cover under **SECTION II – LIABILITY**, our obligations are limited as follows:

**d.   Other Insurance Provided By Us**

The total insurance provided under **Coverage L – Business Liability** and any other policy written by us will not exceed the highest Limit Of Insurance applicable under any one of the policies written by us.

\*\*\*

31.     In response to the tender and pursuant to a Reservation of Rights, State Farm retained counsel to defend Ms. Geister against the underlying lawsuit while reserving the right to seek a judicial determination that it has no continuing duty to defend and no duty to indemnify Ms. Geister against said lawsuit.

32.     State Farm reserves the right to rely upon and/or to amend this Complaint in Declaratory Judgment, if necessary, to include other or additional policy provisions, exclusions, conditions, or limitations, not previously mentioned, that are or may become applicable to the allegations asserted against Ms. Geister.

## COUNT ONE
## DECLARATORY RELIEF

33.     State Farm incorporates by reference Paragraphs 1 through 32 of this Complaint in Declaratory Judgment as if set forth in full herein.

34.     State Farm seeks a determination from this Court that it has no continuing duty to defend and no duty to indemnify Ms. Geister against the claims and allegations in the underlying lawsuit.

35.     A justiciable controversy exists between adverse parties with legal interests susceptible to immediate resolution and capable of judicial enforcement.

36.     The Minnesota Personal Liability Umbrella Policy does not afford coverage or protection for Ms. Geister relative to the underlying lawsuit commenced in South Dakota because the conduct alleged does not trigger the insuring agreement and exclusions to coverage are applicable.  Therefore, State

Farm has no continuing duty to defend and no duty to indemnify Ms. Geister against the claims and allegations asserted against her in the underlying lawsuit.

37.   The Minnesota Businessowners Policy does not afford coverage or protection for Ms. Geister relative to the underlying lawsuit commenced in South Dakota because the conduct alleged does not trigger the insuring agreement and exclusions to coverage are applicable.  Therefore, State Farm has no continuing duty to defend and no duty to indemnify Ms. Geister against the claims and allegations asserted against her in the underlying lawsuit.

38.   The South Dakota Businessowners Policy does not afford coverage or protection for Ms. Geister relative to the underlying lawsuit commenced in South Dakota because the conduct alleged does not trigger the insuring agreement and exclusions to coverage are applicable.  Therefore, State Farm has no continuing duty to defend and no duty to indemnify Ms. Geister against the claims and allegations asserted against her in the underlying lawsuit.

**TRIAL BY JURY IS HEREBY DEMANDED.**

**WHEREFORE**, State Farm prays for the following relief:

1.   That this Court determine and declare that State Farm has no continuing duty to defend and no duty to indemnify Ms. Geister or anyone else against the claims and allegations asserted in the underlying lawsuit in South Dakota; and

2. That this Court grant State Farm its costs and disbursements incurred herein, as well as such other and further relief as the Court deems just and equitable.

**HKM, P.A.**

Dated: January 25, 2018

s/Michelle Christensen
C. Todd Koebele #17287X
Michelle Christensen #23476X
30 East Seventh Street, Suite 3200
Saint Paul, MN 55101
(651) 227–9411
tkoebele@hkmlawgroup.com
mchristensen@hkmlawgroup.com
Attorneys for Plaintiff State Farm Fire
and Casualty Company

4853-1845-9483, v. 1